# Commonwealth, Appellant, v. Gardner.

*Poor laws—Insane hospital—Liability of parent of inmate to Commonwealth.*

The father of an inmate of a county hospital for the insane is liable to the Commonwealth for moneys paid out by it towards the maintenance of his son, although the father had made, at first by agreement with the directors of the poor, and then under an order of court, weekly payments to the county, if it appears that such payments were not sufficient for the maintenance of the son.

Argued September 28, 1921. Appeal, No. 45, Oct. T., 1921, by plaintiff, from order of C. P. Somerset Co., Dec. T., 1919, No. 159, discharging rule to pay over money to Commonwealth in case of Commonwealth v. J. H. Gardner. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART and SADLER, JJ. Reversed.

Rule to pay over money to Commonwealth for maintenance of defendant's son in hospital for insane. Before BERKEY, P. J.

The opinion of the Supreme Court states the facts.

The court discharged the rule. Plaintiff appealed.

*Error assigned* was order, quoting it.

*Edmund K. Trent,* Special Deputy Attorney General, with him *P. G. Cober, George W. Coles,* Special Attorney, and *George E. Alter,* Attorney General, for appellant.—The claim of the directors of the poor, or county, is separate and distinct from the claim of the Commonwealth: Com. v. Penn Trust Co., 31 Montgomery Co. L. R. 141; Weigel's Est., 66 Pittsburgh L. J. 307.

Defendant's son having been committed as an indigent insane patient in the county hospital and as such the Commonwealth having contributed to the son's maintenance therein, and never having been reimbursed therefor, whatever arrangements were thereafter made by defendant with the directors of the poor, or the county, concerned, was a matter which pertained only to the claim of the county, whether the county was partly paid, fully paid or overpaid by defendant or others.

*Charles F. Uhl,* of *Uhl & Ealy,* for appellee.—If the Act of 1915 could be construed as imposing an additional burden upon defendant, then it in effect impairs the obligation of the contract made by the poor directors with him to support his son at the rate which he has paid, and it impairs the obligation implied in the order of the court, namely, that the son would be supported and maintained upon the payment by defendant of the rate fixed in the court's order: William's App., 72 Pa. 214.

The rate fixed by the court of quarter sessions to be paid by defendant to the poor directors was predicated on the conclusion that the State could not recover any money from defendant: Henry's Est., 28 Pa. Superior Ct. 541; Rauwolf v. Glass, 184 Pa. 237; Marsh v. Pier, 4 Rawle 273.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, January 3, 1922:

This is a proceeding on the part of the Commonwealth to recover from J. H. Gardner moneys contributed by the State for the maintenance and support of his son while confined as an indigent insane person at the Somerset County Home and Hospital for the Insane; the court refused to make an order against defendant, and the Commonwealth has appealed.

We find an agreement of counsel showing the following facts: On June 22, 1910, Abbott Gardner, son of

defendant, was admitted to the institution in question; September 26, 1910, the directors of poor, Somerset Co., commenced a proceeding to compel defendant to pay for the maintenance of his son; whereupon, January 24, 1911, defendant agreed to pay $2 a week from the date of the son's admission to the hospital,—which sum was paid until early in 1915, when it was reduced to $1.50; this arrangement continued until April, 1916, when the $2 rate was restored by agreement. Defendant paid at the last mentioned rate until it was raised to $3.50 a week by order of court.

Defendant avers, in his answer to the present proceeding, that the above enumerated payments were "to cover the entire maintenance and support of the said Abbott Gardner during his period of confinement," and that he, defendant, "was not advised......the Commonwealth of Pennsylvania was making any payments......for the support and maintenance of his son."

The evidence adduced at the hearing does not indicate exactly how much it cost to support the inmates of the hospital where Abbott Gardner was confined; but there is some testimony that "all the inmates were charged to the Commonwealth unless it would be someone for which we [the institution] collected eight or ten dollars a week"; and, in the petition originally filed to compel defendant to make payment for his son's maintenance, there is an undenied averment to the effect that in 1910 it cost more than $3 a week to keep Abbott Gardner there. We also find, in a petition subsequently filed by the directors of the poor, in 1917, to obtain a raise of rate for the maintenance of this patient, an averment naming $5 a week as the required rate, which is not specifically denied in the answer defendant then entered. Finally, in a record offered in this case, there are statements by the court of quarter sessions that it was at one time "admitted" the cost during the year 1916 averaged $2.84 a week for each inmate of the hospital, and $3.64 during 1917; further, it was claimed by the directors

the cost was $4.89 during the first two quarters of 1918. These findings were made at the time the rate defendant had to pay was raised to $3.50 a week.

So far as the present record shows, Abbott Gardner was admitted to the Somerset County Home and Hospital for the Insane, June 22, 1910, and continuously confined therein "as an indigent patient"; defendant, all this time, had, and now has, ample means to defray the full cost of his son's maintenance; and, as above shown, it by no means appears that the aggregate of the sums paid by defendant were sufficient to meet the cost of such maintenance, nor does it appear that the amount paid by the Commonwealth on that account, namely, $811.72, was not required for the purpose.

Under these circumstances, the court below plainly erred in dismissing the Commonwealth's rule to show cause why defendant should not pay to it the sum in controversy, which is all it is necessary to determine here.

The order appealed from is reversed and the court below is directed to make the rule absolute; defendant to pay costs.