## Bloise Estate

*Joseph Leta, Jr.*, for accountant.

*James L. Scarazzo, Jr.*, for Commonwealth.

POWERS, P. J., February 28, 1962.—On June 30, 1961, the first and final account of Charles Nick Bloise, executor of the estate of John Bloise, came up for audit and for distribution of the balance by the court. A hearing was held and testimony taken.

This situation arises as the result of the executor of the above-mentioned estate refusing to pay the Commonwealth the sum of $8,783.02, which it claims is due and owing for the support of Mary Bloise, an indigent insane person, and daughter of decedent, at the Torrance State Hospital. The position of the estate is that the only sum due and owing the Commonwealth is $431.99.

The said Mary Bloise was admitted to Torrance State Hospital in April 1945, at a per capita cost rate. She was and still is a patient at the hospital and was a patient at the time of decedent's death, November 17, 1959. In June 1948, the payments to be made by the father of Mary Bloise were reduced to $15 a month, at the request of John Bloise, because he alleged that he was unable to pay the per capita cost rate. It is this last payment figure that the estate used to arrive at the figure of $431.99.

## Findings of Fact

From the testimony given at hearing, we make the following findings of fact:

1. That all debts owing by the estate of John Bloise have been paid by the accountant except for a claim in the sum of $8,783.02, presented by the Commonwealth of Pennsylvania, for the support and maintenance of Mary Bloise, a daughter of the deceased, in the Torrance State Hospital.

2. That Mary Bloise is one of the beneficiaries, under the last will and testament of the deceased, and is entitled to receive one-ninth of the net estate left by her father.

3. That the net estate of the deceased father is sufficiently large to pay off the entire $8,783.02 claimed by the Commonwealth of Pennsylvania if the estate of the deceased is responsible for the payment thereof.

4. That from April 15, 1945 to May 31, 1948, Mr. Bloise, the father, was being charged for the support and maintenance of his daughter at the per capita cost rate, and after the statement that he was unable to pay the per capita cost rate, they charged him at the rate of $15 per month.

5. From the statement of the Department of Revenue, under its seal, for $8,783.02 for the cost and care

and maintenance of Mary Bloise, we find as a fact that the cost of care and maintenance was the amount of $8,783.02.

## Discussion

In Commonwealth v. Gardner, 271 Pa. 520, it was held that the father of an inmate of a county hospital for the insane is liable to the Commonwealth for moneys paid out by it towards the maintenance of his indigent insane son, although the father had made, at first by agreement with the directors of the poor, and then under court order, weekly payments to the county, if it appears that such payments were not sufficient for the maintenance of the son. This is not unlike the situation here. The detailed statement signed by Joseph L. Boerio, agent of the Department of Revenue, shows that a balance for the period of the commitment is $8,783.02, the amount claimed by the Commonwealth. Using the figure of $15 per month, the balance due and owing is $431.99. That the $15 per month payment was insufficient to support Mary Bloise is clearly set forth in the detailed and certified statement of the Commonwealth.

In Low Estate, 15 D. & C. 2d 375 (1959), it was held that the estate of the deceased father of an incompetent daughter is liable for the balance due on account of the past maintenance of the daughter in a State institution, even though the father, during his lifetime, fully complied with monthly payment terms of a court order, and even though the Commonwealth never moved to have the contributions of the father increased during his lifetime. Here the decedent did comply with the lower payment, but it does not preclude the Commonwealth from asserting its claim for the full balance due and owing.

Commonwealth v. Smith, 19 D. & C. 2d 222 (1959), clearly supports the contention of the Commonwealth.

There, defendants' daughter, a mentally retarded individual, was a patient in Pennhurst State School. The Court of Quarter Sessions of Delaware County entered an order on defendants for the sum of $32.50 per month for the care and maintenance of the daughter. The actual cost for the maintenance was $4,529.11, of which defendants paid $1,970, as per the court order, leaving a balance of $2,559.11. Defendants claimed that as a result of the monthly payments they are not liable for the balance. The court, in its opinion, stated:

"At first blush, it might seem that where a relative has paid the full amount of an order assessed against him for the maintenance of an incompetent dependent, he should not be responsible for the actual cost of maintenance which may be in excess thereof. However, the sounder view seems to us to be that the fixing of the court order merely means that so long as it is complied with, the responsible relative will not be held in contempt; nor is it an acquittal of his obligation to pay the actual cost when and if he becomes able. If such were the law, one might pay a very modest modicum as token support and then after the Commonwealth has kept the incompetent at a loss for perhaps a lifetime, the living parent might come into sudden wealth and not be required to make the Commonwealth whole . . ." The court further held that the Commonwealth could bring an action in assumpsit to recover the money due and owing.

The facts in the instant case, although somewhat different, are sustained by this case in that an agreement was made to reduce the payments to $15, because of decedent's request, stating that he was unable to pay the per capita cost rate. However, his estate has a sufficient amount to pay the full claim with a balance left to pay the legatees. The total assets of the estate

amounted to $25,192.44; total credits of $5,428.53, leaving a balance due of $19,763.91. To not allow the Commonwealth its full claim would be an undue burden upon it and place a greater liability on the taxpayer.

Now, February 28, 1962, we herewith make the following:

### Order

It is ordered and decreed that the claim of the Commonwealth of Pennsylvania in the sum of $8,783.02 is hereby allowed.